UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00098-WYD

RICHARD S. PASQUALETTO,

      Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security Administration

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's applications for disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433.  Plaintiff's application filed May 6, 2002 (Transcript

["Tr."] at 50-52) was denied initially.  *Id.* at 93-96.  A hearing was held on September

16,  2003 (*id.* at 31-88).  On December 17, 2003, Administrative Law Judge ["ALJ"]

Antoinette Martinez issued an unfavorable decision, finding that Plaintiff was not

disabled.  *Id.* at 13-24.

In the decision, the ALJ found at step one of the five-step sequential analysis

required by law that Plaintiff has not engaged in substantial gainful activity since the

alleged onset date of disability.  Tr. at 17, 23.  At step two, the ALJ found that Plaintiff

has the following impairments which are severe:  "mild hearing loss and chronic

sinusitis". *Id.* at 18.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal a Medical Listing.  *Id.*

The ALJ then examined the medical evidence and assessed Plaintiff's residual functional capacity ["RFC"].  Tr. at 18-22.  She first noted that Plaintiff was 57 years old at the time of the decision with a high school education and one year of college.  *Id.* at 17.  The ALJ found that Plaintiff "has the residual functional capacity to perform work at all exertional levels so long as it does not involve concentrated exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation." *Id.* at 22.  In determining this RFC, the ALJ gave "little weight" to the opinions of Plaintiff's treating physician and relied instead on the opinion of the consultative examiner, Dr. Clark, and a pulmonary function study performed in 2002.  *Id.*  In making the RFC assessment, the ALJ found that Plaintiff was not fully credible.  *See* Tr. at 19.

At step four, the ALJ addressed whether Plaintiff could perform his past relevant work as a radiologic equipment specialist and x-ray equipment tester.  Tr. at 22.   The ALJ referred to testimony of a vocational expert at the hearing who testified in response to a hypothetical question "that the claimant could return to his past relevant work as a radiologic equipment specialist and x-ray equipment tester both as he performed it and as it is generally performed in the national economy." *Id.*  The ALJ found that this testimony was well supported by the evidence as a whole.  *Id.*  In so finding, the ALJ stated that there was no support in the record for the limitations imposed by Dr. English, the treating physician.  *Id.*  Instead, the ALJ found that "the exam of Dr. Clark and the associated spirometry is more probative of the degree of [Plaintiff's] illness and

his residual functional capacity, and this assessment is well supported by the claimant's extensive activities of daily living." *Id.* Accordingly, the ALJ found that Plaintiff was not disabled at step four of the analysis. *Id.* at 22-23.

Upon Plaintiff's request for review, the Appeals Council determined that there was no reason to review the ALJ's decision, and denied Plaintiff's request for review. Tr. at 5-8. This was the final decision of the agency, and this Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.     Plaintiff's Arguments

1.     Whether the ALJ Did Not Properly Weigh the Medical Evidence

Plaintiff argues that the ALJ erred in assessing the medical evidence and the opinions of the treating providers.  Specifically, it is argued that the ALJ improperly admitted and considered the physical capacity assessment of a disability examiner from the DDS, designed as a single-decision-maker ["SDM"], who made the initial decision to deny Plaintiff's claim.  Plaintiff argues that this assessment was improperly designated as medical evidence and the ALJ erred in relying it as such.  Plaintiff also argues that the opinion of Dr. English, the treating physician, should have been given controlling weight or, at a minimum, significant weight, and that the ALJ erred in relying on the opinion of the consultative examiner.  I address these issues below.

a.     The Assessment of the SDM

I first address the physical capacity assessment prepared in September 2002 by the SDM.  This assessment appears in the record in the section entitled "Medical Records".  *See* Tr. at 3, 172-79.  The SDM found in the assessment that Plaintiff had environmental limitations in connection with his ability to work; namely, that Plaintiff's chronic sinusitis and occasional headaches and dizziness "[p]recludes working in hazardous Jobs and around Concentrated exp. [exposure] to: fumes, odors, dusts, etc." *Id.* at 176.  At the hearing, Plaintiff's counsel objected to this assessment on the basis that it was not from a medical source and should not be given any weight.  *Id.* at 34. The ALJ noted the objection for the record, entered the document into evidence, and stated that she would give it "appropriate weight."  *Id.*

-4-

The ALJ did not discuss this assessment in her decision.  The Commissioner argues that this means that the ALJ gave the SDM's assessment no significant weight. I cannot agree based on my review of the record.  The Commissioner does not dispute that the SDM was not an acceptable medical source, meaning that the ALJ could not rely on this decision as support for her RFC.  However, the RFC found by the ALJ specifically tracked the impairments found in the SDM's assessment.  No other medical source in the record supports the RFC finding that Plaintiff must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation.  The treating physician, Dr. English, opined that Plaintiff must avoid all exposure.  The consultative examiner whose opinion the ALJ gave weight to did not make any limitations in connection with environmental exposure.

The only conclusion that can be drawn from the foregoing is that the ALJ improperly relied on the SDM in assessing Plaintiff's RFC.  Further, if she did not rely on the SDM, the RFC is otherwise unsupported by the record.  Finally, since the ALJ did not state what evidence supported her RFC finding, the Court is left to speculate how she reached her RFC assessment.  The foregoing errors require that the case be remanded to the Commissioner.  *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005) (remanding the case where the court was unable to determine what evidence the ALJ relied on in connection with the RFC).[1]

---

[1]   While I acknowledge that citation to unpublished opinions is disfavored, I find that this and the other unpublished opinions cited in this Order have persuasive value with respect to a material issue that has not been addressed in a published opinion and will assist the court in its disposition" of the case. 10th Cir. R. 36.3(B).

       b.    <u>Whether the ALJ Properly Weighed the Treating Physician's</u>
<u>Opinions</u>

I now turn to the ALJ's findings as to Dr. English, the treating physician, and

determine whether the ALJ properly weighed his opinions.  In making this

determination, I note that an ALJ is "required to give controlling weight to a treating

physician's opinion about the nature and severity of a claimant's impairments, including

symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well

supported by clinical and laboratory diagnostic techniques and if it is not inconsistent

with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214

(10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2); Soc. Sec.

Ruling 96-2p.

However, a treating physician's report can be rejected "if it is brief, conclusory

and unsupported by medical evidence" or is "not supported by specific findings."

*Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).  "The ALJ must give specific,

legitimate reasons for disregarding the treating physician's opinion that a claimant is

disabled."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th

Cir. 1995).

In the case at hand, the ALJ stated that she gave little weight to the opinions of

Dr. English.  Tr. at 21.  The ALJ first found, in determining that Plaintiff was not

credible, that "[t]here is no evidence in the record that the claimant has had either

frequent or recent exacerbations of his illness to the extent alleged in his hearing

testimony." *Id.* at 19.  Further, she stated that "[t]he progress notes of his physician,

Gerald English, M.D., document only minor symptoms. . . . "  *Id.*

The ALJ then discussed Dr. English's Pulmonary Residual Functional Capacity

Questionnaire.  *Id.* at 19-20 (citing Tr. at 371-74).  In that Questionnaire, Dr. English

found that Plaintiff had numerous symptoms as a result of his "acute and chronic

sinusitis, nasal polyposis, sinotracheal bronchitis and reversible obstructive airway

disease", including shortness of breath, orthopnea, wheezing, rhonci, episodic acute

asthma and bronchitis, fatigue, palpitations and coughing."  *Id.* at 20, 371.  Dr. English

also found that Plaintiff's condition was "periodically disabling" as Plaintiff has attacks

every 1-3 months which incapacitate him for 10-14 days at a time.  *Id.* at 20, 371-72.

He further found, among other things, that Plaintiff's experience of pain or other

symptoms were severe enough to occasionally interfere with attention and

concentration, that Plaintiff could lift and carry occasionally up to 20 pounds, that he

would often need to take unscheduled breaks of 10 minutes, that he would miss four

days of work per month on average, and that he must avoid all exposure to a number of

environmental factors.  *Id.* at 372-74.

While the ALJ did not specifically state the weight given to each of the above

findings, she appeared to reject all of them.  More specifically, she found that the

progress note of Dr. English from November 1, 1998 onward (the date Plaintiff alleges

he became disabled) do not support Dr. English's findings in the Questionnaire, as they

show "transient complaints of coughing and headaches" which do not "demonstrate a

level of impairment which would prevent the claimant from performing all substantial

gainful activity."  Tr. at 20.  The ALJ also found that the progress notes showed "no

significant objective findings" and "no particular complaints."  *Id*. at 20-21.  It was also

noted by the ALJ that Dr. English's findings were inconsistent with a pulmonary function

study performed on June 7, 2002 which was completely normal (*id*. at 21) (citing Exhibit

7F, pp. 3-8, Tr. at 361-67) and the findings of the consulting examiner, Dr. Clark.  *Id*.

The ALJ also rejected Dr. English's opinion of November 24, 1998, that Plaintiff

was "permanently disabled" by hypertensive cardiovascular disease and chronic

sinotracheal bronchitis" on the basis that he "did not cite any objective signs, symptoms

and findings to support this assertion."  Tr. at 20 (citing Ex. 6F, p. 16, Tr. at 246).  The

ALJ also found that the determination of disability is an issue reserved for the

Commissioner.  *Id*.  The ALJ concluded:

> As the opinion of the treating physician is not well supported by objective
> medical evidence and is inconsistent with the opinion of the consultative
> physician, Dr. Clark, and the 2002 spirometry showing normal functioning,
> it is entitled to little weight. . . . In addition, Dr. English admitted that the
> claimant's condition was essentially unchanged since he had begun
> treating him.  He wrote, 'Patient was first examined in 1989, and his
> disease process has not changed substantially to the present time.' (Ex.
> 9F, p. 4).  The claimant's work activity is consistent with this statement, as
> he was successfully employed for many years, until November 1998,
> despite his complaints.

*Id*. at 22 (internal citations omitted).

I find that the ALJ did not properly weigh Dr. English's opinions, and that many

of the reasons she gave for rejecting his opinions are not supported by substantial

evidence.  Accordingly, I find that the case must be remanded to the Commissioner on

this ground also.

First, I note at the outset that while the ALJ stated that she gave "little weight" to Dr. English's opinions, it appears that she rejected the opinions in their entirety.  If she did accept any of his findings or opinions, the ALJ's decision does not state this.  The Court is thus left to speculate what weight, if any, she gave to many of the findings made by  Dr. English.[2]  This was improper.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

I also find that the ALJ erred in connection with her analysis of the progress notes of Dr. English.  In that regard, I note that the ALJ only looked at progress notes after November 1998 since that is the time frame that Plaintiff claims he became disabled.  This was error, as records prior to the date of disability are clearly relevant to the issue of whether Plaintiff is disabled and should have been considered by the ALJ.  *See Webster v. Chater*, No. 95-5231, 1996 WL 494315 (10th Cir. 1996) (noting that the ALJ's review of the evidence was proper as the ALJ's decision reflected that he reviewed all of the medical records, even those that predated plaintiff's alleged disability onset date).  Those records show over a decade of treatment for Plaintiff's

---

[2]  While the ALJ did state that she rejected certain findings made by Dr. English at p. 3 of the Questionnaire, she did not state what weight, if any, she gave to the remainder of Dr. English's findings.

condition with four surgeries that needed to be appropriately analyzed in determining

whether Plaintiff is disabled.

I also find that the ALJ erred in finding that the progress notes from November

1998 onward did not state objective medical findings and/or report significant

complaints by Plaintiff.  Indeed, the progress notes are replete with findings of objective

symptoms based on Plaintiff's complaints, as detailed in Plaintiff's opening brief at

pp. 11-15.  "An ALJ may not simply pick out portions of a medical report that favor

denial of benefits, while ignoring those favorable to disability."  *Lee v. Barnhart*, No. 03-

7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004).  To the extent the ALJ did not

understood the abbreviations used by Dr. English in his notes, she had a duty to

contact him for clarification or otherwise obtain the assistance of a medical expert to

assist her.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20

C.F.R. § 404.1512(e)(1) (2001)).

I further find error with the ALJ's conclusion that "Dr. English admitted that the

claimant's condition was essentially unchanged since 1989 when he had begun

treating him." Tr. at 22.  As the ALJ noted, Dr. English actually stated that Plaintiff's

disease process has not changed substantially" since he began treating him in 1989.

*Id*. (citing Tr. at 374).  This statement of Dr. English appears to be true from the record.

The disease process, *i.e.*, chronic sinusitis and other related problems, began in 1989

and continued throughout Plaintiff's treatment.  This statement does not, however,

necessarily mean that Plaintiff's symptoms or impairments as a result of the disease

process remained the same, and the ALJ improperly expressed a lay judgment in

making this finding. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004)

("'[i]n choosing to reject [a] . . . physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's

opinion outright only on the basis of contradictory medical evidence and *not due to his

or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original)

(quoting *McGoffin*, 288 F.3d at 1252).

Indeed, there is evidence in the record that Plaintiff's symptoms and condition

did not remain the same. *See, e.g.*, Tr. at 375 (CT scan of 2002 showing "[p]rogression

of the previously seen sinusitis with severe pansinusitis" when compared to CT scan of

1992 and finding that the frontal sinuses had "near-complete opacification"), 219

(although Plaintiff had tolerated prior operation well, another operation was necessary

since Plaintiff "had increased nasal mucosal erythema and edema and recurrence of

the polyps"), *see also* 248 (progress note shortly after onset date showing increasing

nasal airway congestion with increase in medication dosage), 241 (increasing nasal

airway congestion), 239 (same), 234 (showing new inflammation of larynx).  Finally on

this issue, to the extent Dr. English's statement about the disease progress not

changing substantially was ambiguous or unclear, the ALJ had a duty to contact him to

determine if the statement meant what the ALJ thought it did. *McGoffin*, 288 F.3d at

1252.  The ALJ erred in not doing this.

I also agree with Plaintiff that the ALJ improperly downplayed the impact of the

CT scan in February 2002 that showed a progression of the disease.  Tr. at 375.  This

progression and the complete opacification of Plaintiff's sinuses certainly provides

support for Dr. English's opinions and his functional capacity assessment. On the other hand, the ALJ chose to give great weight to a pulmonary study conducted at the request of the Social Security Administration in June 2002. *See id.* at 361-64   The ALJ appeared to be selectively relying on evidence that she believed supported her findings, while downplaying evidence that did not.

Further, the pulmonary study does not provide a basis to reject the functional capacity assessment of Dr. English in the Questionnaire. As the Plaintiff notes in his opening brief, testing of lung capacity in the pulmonary study appears to have little relation to the functioning of the sinuses and the nasal area, the severe impairments at issue in this case. Instead, the CT Scan appears to be the best evidence of that functioning. The CT scan and the progress notes of Dr. English document objective findings that could cause the impairments noted by Dr. English in his assessment. While the pulmonary study may be relevant to Dr. English's finding as to impairments from asthma, the fact that Plaintiff had clear lungs during the study does not necessarily mean that Plaintiff could not have had asthma attacks in the past. This is particularly true as Dr. English had noted that these attacks only occurred periodically. For the ALJ to assume otherwise is an improper lay judgment.

Further, I agree with Plaintiff that when an ALJ decides that a treating physician's opinions are not dispositive and not entitled to controlling weight, that does not allow him or her to reject the opinions outright. *Langley*, 373 F.3d at 1120. Instead, the treating physician's opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d

1297, 1300 (10th Cir. 2003)).  The ALJ's opinion does not reflect that she gave Dr.

English's opinion any deference or that she gave consideration to what lesser weight

the opinion should be given.  Further, she did not analyze the relevant factors set out in

42 U.S.C. § 404.1527.

Finally, I also find error with the ALJ's wholesale rejection of Dr. English's finding

on November 24, 1998 that Plaintiff was "permanently disabled" by hypertensive

cardiovascular disease and chronic sinotracheal bronchitis.  The ALJ rejected this

finding on the basis that Dr. English "did not cite any objective signs, symptoms and

findings to support this assertion."  In making this finding, the ALJ ignored all of the

other medical evidence from Dr. English that did state objective signs, symptoms and

findings that could support this finding, as well as the CT scan in 2002.  Further, the

ALJ was not entitled to reject this opinion on the basis that it is an issue reserved to the

Commissioner.  While the ALJ was not required to give controlling weight to this

opinion, she was not entitled to reject the opinion outright.  *Miller v. Barnhart*, No. 01-

2231, 2002 WL 1608452, at *3 (10th Cir. 2002) ("[t]he adjudicator is required to

evaluate all evidence in the case . . . including opinions from medical sources about

issues reserved to the Commissioner").

> c.   Whether the ALJ Properly Weighed the Findings of
>      Dr. Clark

I also find certain problems with the weight the ALJ gave to the opinion of

Dr. Clark.  Dr. Clark is a consultative examiner who saw Plaintiff only once.  Tr. at 359-

60.  I first note that the opinion of an examining physician is generally entitled to less

weight than that of a treating physician. *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751, at *2 (10th Cir. 2003).  Here, while it appears that the ALJ gave conclusive weight to the report of Dr. Clark and no weight to the opinions of Dr. English, she never specifically stated this.  "If an ALJ intends to rely on a nonexamining source's opinion, [s]he must explain the weight he is giving it."  *Id.* (citing 20 C.F.R. § 416.927(f)(2)(ii)).

Further, I note that Dr. Clark worked for Colorado Pulmonary Associates, and it does not appear from the record that he was an ear, nose and throat specialist as was Dr. English.  This was not discussed or considered by the ALJ.  Indeed, Dr. Clark specifically deferred to Dr. English as the specialist in connection with his findings as to Plaintiff's chronic cough, which the ALJ ignored.

I also note that while Dr. Clark specifically stated that functional abilities to perform work such as sitting and standing, hearing, speaking and traveling were unrestricted, he made no findings as to environmental exposure, or that such exposure was unrestricted.  It is thus unclear whether Dr. Clark even purported to assess Plaintiff's ability to be exposed to environmental factors.  Further, he made no findings as to the other areas addressed by Dr. English, such as whether Plaintiff would be absent from work due to his impairments, whether he would need to take unscheduled breaks, and whether Plaintiff's pain or other impairments may interfere with attention and concentration.  In short, it is unclear from Dr. Clark's statement that certain impairments were "unrestricted" whether he considered only those impairments or whether he considered and rejected other impairments, including those found by Dr. English.  Since Dr. English's functional capacity assessment was dated after

-14-

Dr. Clark issued his opinion, it may well be that Dr. Clark did not realize that an opinion on these additional restrictions was warranted.  Without an opinion on those restrictions, the ALJ would had no competent evidence to reject the restrictions imposed by Dr. English. This needs to be clarified on remand.

Finally, the Commissioner argues that Dr. Clark's findings that Plaintiff had no evidence of asthma or upper respiratory symptoms of disabling severity are a basis to discount Dr. English's finding that Plaintiff had attacks of asthma that were periodically disabling.  I reject this argument.  The fact that Plaintiff did not have asthma when he saw Dr. Clark does not mean that he did not have had asthma attacks in the past, nor does this provide a basis to conclude that Dr. English's statement about these attacks was not credible.  Further, lung capacity and asthma are not necessarily related to the severe impairments at issue and how they impact Plaintiff's ability to work.

> d.    Whether the ALJ Failed to Consider All of Plaintiff's Impairments

Finally in connection with the medical evidence, I find that the ALJ did not properly consider Plaintiff's nonexertional impairments, including pain, fatigue, dizziness, headaches, and nose bleeds, which are all documented in the medical evidence.  The ALJ did reference pain and fatigue, but found that the progress notes only documented minor symptoms.  Tr. at 19.  As stated previously, this finding is not supported by the record.  The other reasons given for discounting Plaintiff's pain and fatigue are also not supported by substantial evidence, as discussed below in the section addressing credibility.  *See also Sherman v. Apfel*, No. 97-7085, 1998 WL

-15-

163355, at *5-6 (10th Cir. 1998).  Further, even if pain is properly found, by itself, not to be disabling, "that is not the end of the inquiry."  *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).  "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'"  *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted).

As to dizziness, the ALJ discounted this because Plaintiff supposedly did not tell Dr. Clark that he had this symptom.  Tr. at 19.  However, the fact that Dr. Clark did not reference this in a report dictated three months after his examination does not mean that it was not reported to him.  More importantly, even if Plaintiff did not reference dizziness in his one time examination by Dr. Clark, the progress notes of Dr. English clearly document this symptom.  *See id.* at 232-33, 266, 293.  The ALJ was not entitled to discount the objective medical evidence finding this symptom simply because Plaintiff did not discuss this symptom with Dr. Clark.  A proper evaluation of Plaintiff's dizziness and the impact of same is particularly important in this case since the vocational expert testified that in response to the hypothetical question that dizziness would preclude the ability to perform the past relevant work.  *Id.* at 87; *see also Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3rd Cir. 1984) (holding that a pain type of analysis should apply to dizziness, since this type of complaint cannot be discredited solely on the absence of direct medical evidence) (cited with approval in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

As to headaches, the ALJ acknowledged that Plaintiff testified to headaches which impacted memory and concentration as well as nosebleeds. Tr. at 18. However, the ALJ did not address what weight, if any, she gave to this testimony or to the medical evidence that documented such problems. The ALJ also did not address the impact of these headaches and nosebleeds on Plaintiff's ability to work. Finally, the ALJ improperly failed to consider the effects of Plaintiff's medication, or the significance of the fact that he lost his license to perform his work because he was making too many errors. Plaintiff testified as to this latter issue that the Colorado Department of Health found that he was making a tremendous number of errors in his work. Obviously, if this is true, this would impact Plaintiff's ability to perform his past relevant work. This is another ground for remand of the case.

> 2.  Whether the ALJ Erred at Step Four in Connection with the Vocational Evaluation

Plaintiff also argues that it was error for the ALJ and VE to rely on the Dictionary of Occupational Title ["DOT"] for the job descriptions of Plaintiff's past relevant work ["PRW"] since the descriptions had not been updated for 15 years. This argument was presented to the ALJ and the Appeals Council by counsel for Plaintiff (*see* Tr. at 169, 395-96), and was not addressed by either the ALJ or the Appeals Council in their decisions. More specifically, Plaintiff argues that certain evidence omitted from the record (attached to the Unopposed Motion to Supplement the Record filed April 15, 2005) ["Supplemental Record"] as well as Plaintiff's testimony and vocational evidence submitted to the Appeals Council shows that the PRW did involve exposure to

concentrated levels of irritants and also involved other non-exertional demands that exceeded Plaintiff's RFC.

I agree with Plaintiff that the ALJ erred at step four and that the case must also be remanded on this ground.  The evidence submitted to the Appeals Council showed that on a scale of 1-100, Plaintiff's prior work was rated at 44 in connection with exposure to contaminants.  Tr. at 409.[3]  Plaintiff also had provided the ALJ with a description of his prior work requirements in a Pre-Hearing Memorandum that he contended was more accurate than the DOT and with other material that was not considered by the ALJ because it was removed from the record.  *See* Supplemental Record, Ex. E, pp. 4-8.

I find that the Pre-Hearing Memorandum, combined with the additional information presented to the Appeals Council and to the ALJ which was not made part of the record, casts serious doubt as to the viability of the ALJ's reliance on the DOT as to the descriptions of the PRW, her reliance on the VE's testimony, and her finding that the work did not involve concentrated exposure to chemicals.  The ALJ asked the VE at the hearing whether the DOT requirements were inconsistent with the limits set in the hypothetical question.  Tr. at 82.  She did not, however, ask the VE whether the job descriptions as performed in the national or regional economy were consistent or inconsistent with the DOT, and this issue is unclear from the record.  This was error.

---

[3]  This new evidence was properly considered by the Appeals Council as it was new, material, and related to the relevant time period.  *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Accordingly, this evidence becomes part of the record I assess "in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."  *Id.*

*See Smith v. Barnhart*, No. 04-7027, 2006 WL 467958, at *3 (10th Cir. Feb. 28, 2006)

("before an ALJ may rely on expert vocational evidence as substantial evidence . . .,

the ALJ must ask the expert how his or her testimony as to the exertional requirement

of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for

any discrepancy on this point'") (quotation omitted).[4]

More importantly, the ALJ did not ask the VE whether he agreed with Plaintiff's

contention in his Pre-Hearing Memorandum and in other evidence submitted to the ALJ

that the job description of the PRW as performed by Plaintiff did not directly correspond

with the DOT, nor ask she ask for any explanation by the VE as to how the work was

actually performed in his experience.  Finally, she did not discuss these issues in her

decision.  Accordingly, I find that the ALJ's decision at step four was not supported by

substantial evidence.

The Commissioner argues, however, that Plaintiff testified in September 2003

that his past relevant work was accurately described in the DOT, except he had greater

lifting requirements as a radiologic equipment specialist.  *See* Tr. at 59-61.  This

argument fails to consider Plaintiff's testimony in context.   First, Plaintiff did not testify

that the DOT accurately reflected his past work as an x-ray equipment tester.  Instead,

as the Commissioner acknowledges in its Statement of Facts, Plaintiff stated that the

DOT described only half of his past work.  *Id.* at 62.  Second, the Commissioner

---

[4]   The ALJ's statement in her decision that the VE testified that the job of radiological equipment specialist as performed by the claimant was the same as that described in the DOT with one exception (Tr. at 22) is not supported by my review of the record of the hearing.  *See* VE's testimony at 71-72, 81-88.  The same is true of the ALJ's statement that the VE testified that the job of x-ray equipment specialist was classified as light in the DOT but was heavy as performed by the Plaintiff.  *Id.*

ignores the fact that at the beginning of the hearing, Plaintiff testified that the factual allegations as to his past work in the pre-hearing memorandum submitted to the ALJ were accurate.  *Id.* at 41.  The Pre-Hearing Memorandum made clear that the DOT descriptions of Plaintiff's jobs are "significantly out-of-date and not entirely accurate." Tr. at 168.  The Memorandum then described how the past work as actually performed by Plaintiff differed from the DOT, including the fact that the jobs "require significant and constant exposure to environmental hazards."  *Id.* at 169.  The ALJ improperly failed to consider or address this.[5]

Finally, since I previously found that the ALJ did not consider all of Plaintiff's impairments, this may impact the validity of the hypothetical question.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the . . . decision'") (quotation omitted).  This will also need to be assessed on remand.

3.   Whether the ALJ Erred in His Credibility Determination

Finally, I agree with Plaintiff that the credibility determination is not linked to substantial evidence on the record, as required.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Accordingly, a remand is also proper on this ground.

---

[5]   I further note that the ALJ should probably have clarified what she meant by avoiding "concentrated" exposure to environmental contaminants.  This term is rather vague in the context of this case.  I note that Soc. Sec. Reg. 96-9P states that when determining restrictions to exposure to odors or dust, the RFC assessment must "state the extent of the restriction; e.g., whether only excessive or even small amounts of dust must be avoided."  I am not sure that the word "concentrated" complies with this directive.

In finding that Plaintiff's testimony was not credible, it appears that the ALJ culled the evidence and cited isolated parts that supported her conclusion while ignoring others parts that did not.  This was improper.  *See Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) ('[i]n evaluating plaintiff's testimony and comparing it with 'prior statements and other evidence,' . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review") (citing cases); *see also Sherman*, 1998 WL 163355,   at *5.

For example, the ALJ cited lawn mowing as inconsistent with the evidence and Plaintiff's testimony (Tr. at 19), when in fact the testimony was that Plaintiff needed to wear a respirator to mow the law and that he was only able to mow a portion of the lawn for about 10-15 minute time periods.  *Id.* at 54, 59.  The ALJ also cited the fact that Plaintiff got out of the house 4 times a week and visited friends 2 or 3 times a week.  However, she failed to cite Plaintiff's testimony that these visits would frequently be cut short (*id.* at 58) and his wife's testimony that these outings were often terminated because of Plaintiff's reaction to even minimal fumes.  *Id.* at 74.[6]  The ALJ also cited the statements by Plaintiff that he could clean dishes and cook as a basis to find his testimony not credible (*id.* at 19), while ignoring Plaintiff's testimony as to his limitations in connection with same.  *Id.* at 149.  Finally, the ALJ also improperly ignored Plaintiff's testimony as to how fatigue, headaches and other nonexertional factors impacted his

---

[6]  In fact, the ALJ failed to refer in any manner to the testimony of Plaintiff's wife.

activities of daily living.  In short, the ALJ "did not attempt to link h[er] credibility

determination to substantial evidence, failing to point to any evidence contradicting or

undermining [Plaintiff's] assertions."  *See O'Neal v. Barnhart*, No. 01-6200, 2002 WL

244843, at *3 (10th Cir. 2002).

Further, I agree with Plaintiff that the fact that someone can cook and clean

dishes is not necessarily inconsistent with the limitations that Plaintiff describes from

his impairments.  The same holds true of the fact that Plaintiff was able to go to the

store, leave his home 4 times a week, see friends and family, and travel.  "[S]poradic

diversions do not establish that a person is capable of engaging in substantial gainful

activity."  *Byron v. Heckler*, 742 F.2d 1232, 1235 (citing *Broadbent v. Harris*, 698 F.2d

407 (10th Cir. 1983)).

The ALJ also found Plaintiff not credible because "Dr. English's records show

that the claimant did not require frequent treatment for his symptoms, and was seen

only every 2-3 months."  Tr. at 19.  In making this finding, the ALJ improperly

discounted the long and extensive record of treatment by Plaintiff which remained

relatively constant for over a decade.  Second, the ALJ failed to discuss the

significance of Plaintiff's testimony that he was told by his doctor that there was not

much else to be done.  *See* Tr. at 66.

Finally, the ALJ stated that because Plaintiff had been able to work on a part

time basis, this fact "strongly indicates that he could perform his prior job" on a full time

basis.  *See* Tr. at 19.  I find that this is pure speculation, unsupported by any evidence.

The ALJ had already found that this minimal part time work was not substantial gainful

activity, and it was error for her to translate an ability to perform part time work with an ability to perform work on a full time basis.  Further, the ALJ's finding on this issue failed to consider and weigh Plaintiff's testimony that he did this part time work in a manner very different from how he performed the work on a full time basis, and that Plaintiff had to quit doing the work after 1998 because he was ill much of the time and was making mistakes.  *Id*. at 68-69.[7]

III.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated March 23, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

---

[7]   The Commissioner argues in its response brief that because Plaintiff had worked full time without deterioration over the course of the disease process that mean that he could still do his prior work.  This was not a specific finding made by the ALJ.  *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985) (a decision should not be upheld on a basis not cited by the ALJ or by the Appeals Council).  Further, the argument ignores the fact that Plaintiff's condition did not remain the same, as discussed earlier in this Order.  *See, e.g.*, 375 (CT scan showing progression of the disease).  I note that the Commissioner also made a number of other arguments in its response brief that were not a basis of the ALJ's decision.  Those arguments also cannot be considered as a basis to uphold the ALJ's decision.